Jody R. HINES and Vern U. Hines, Jr., Plaintiffs–Appellants,

v.

William E. SMITH and Jessie L. Smith, Defendants–Respondents,

and

Old Kinderhook Development Co., LLC., Plaintiff–Respondent,

v.

William E. Smith and Jessie L. Smith, Defendants–Respondents,

and

Jody R. Hines, Defendant–Appellant.

No. 26451.

Missouri Court of Appeals, Southern District, Division One.

July 29, 2005.

Motion for Rehearing or Transfer Denied Aug. 17, 2005.

Application for Transfer Denied Sept. 20, 2005.

Susan K. Roach, Clayton, MO, for Appellants.

James E. Baldwin, Lebanon, MO, for Respondents William & Jessie Smith.

C. Bradley Tuck, Springfield, MO, for Respondent Old Kinderhook Development Co., LLC.

NANCY STEFFEN RAHMEYER, Judge.

This appeal is the result of litigation between Jody and Vern Hines ("the Hineses"), Ed and Jessie Smith ("the Smiths"), and Old Kinderhook Development Company, L.L.C. ("Old Kinderhook"), over a contract for deed entered between Jody and her father, Ed, on property now owned by Old Kinderhook.[1] The litigation commenced with Jody and her husband, Vern, filing a petition against Ed and his wife, Jessie, asking for relief on four counts. Count I was an action for specific performance of the contract for deed. Count II requested damages for the denial of use and enjoyment of the property after Ed changed the locks on the property. Count III was a conversion action alleging that the Smiths converted a boat dock and lift when they moved the dock and lift to another property.[2] Count IV requested that the court partition the property, order an accounting of the rents, issues, and profits the Smiths obtained from the property, and divide the rents, issues, and profits between the two couples according to their respective interests.

The Smiths filed a counterclaim against the Hineses, which included two counts. Count I was a breach of contract action, alleging that Jody never paid the utility bills for December 1996 and January 1997 and the tax statements for 1996, and that Jody did not make loan payments or insurance, tax, and utility reimbursements in a timely fashion as required by the contract. Count II was a declaratory judgment action in which the Smiths sought to clarify the rights, obligations, and liabilities of the parties under the Contract for Deed.

The Hineses answered the counterclaim by denying that Jody failed to make the required payments. They further asserted that Ed breached the contract himself in November 1996, prior to any alleged breach by Jody, when he executed a deed conveying the property to Ed Smith and Jessie Smith, husband and wife.[3]

All of the lawsuits were consolidated for trial. The trial court denied all four counts of the Hineses' petition; it granted the Smiths' counterclaim on the breach of contract action against the Hineses and denied the declaratory judgment action. The Hineses appeal the denial of all four of their counts; however, they do not appeal the grant of judgment in favor of the Smiths for a breach of contract. As such, it is unappealed and, therefore, a final judgment. *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 502 n. 1 (Mo.App. S.D.2004). That failure is dispositive on

---

1. We refer to the parties by their first names for ease of discussion only and intend no disrespect by using this convention.

2. The dock was previously attached to the shoreline of the subject property, and the Hineses claimed that they were the sole owners of the lift and half-owners of the boat dock.

3. Old Kinderhook subsequently filed a petition against the Smiths and Jody asking for specific enforcement of a contract to purchase real estate to which the Smiths consented. (Vern was later added to the lawsuit as an indispensable party.) Jody moved to dismiss the lawsuit, contending that the option contract was invalid because it was not signed by her or anyone authorized to sign it on her behalf and filed a counterclaim against Old Kinderhook for recovery of property, monthly rents and profits, damages, and costs. She also filed a cross-claim against Ed that sought to recover actual and punitive damages for the loss of use and enjoyment of the premises as well as attorney fees, expenses and costs for defending the lawsuit against Old Kinderhook. Because the resolution of this appeal is determined by the lawsuits between the Smiths and the Hineses, we will not discuss Old Kinderhook's action in greater detail.

the issues raised in the Hineses' point relied on.

■ The point relied on states:

THE TRIAL COURT ERRED IN [ITS] JUDGMENT DENYING COUNT I OF [APPELLANTS'] PETITION FOR SPECIFIC PERFORMANCE, COUNT II FOR LOSS OF ENJOYMENT, COUNT III FOR CONVERSION[,] COUNT IV FOR AN ACCOUNTING AND PARTITION AGAINST RESPONDENTS [SMITHS], [APPELLANTS'] COUNTERCLAIM AGAINST RESPONDENT OLD KINDERHOOK AND [APPELLANTS'] CROSSCLAIM AGAINST [RESPONDENTS] [SMITHS] FOR THE REASON THAT THE APPELLANTS WERE NOT IN DEFAULT OF THE CONTRACT FOR DEED SINCE APPELLANTS SUBSTANTIALLY PERFORMED THEIR OBLIGATIONS UNDER THE CONTRACT AND RESPONDENT WILLIAM SMITH CONVEYED THE PROPERTY TO RESPONDENT JESSIE SMITH IN VIOLATION AND BREACH OF THE CONTRACT FOR DEED.[4]

A brief review of the facts is necessary to our analysis. Ed and Joan Smith purchased a vacation home in the Lake of the Ozarks area on June 17, 1977. Their daughter, Jody, and her husband, Vern, also used the vacation home. In 1984, the Hineses entered into a verbal agreement with Ed to purchase a half-interest in the home. The agreement also included a provision specifying that fees for expenses, maintenance, taxes, and insurance would be shared equally. Jody began making payments on the home on April 15, 1984.

Joan became ill in 1994; she died in September 1995. Before Joan's death, Jody and Ed had agreed that they needed to execute a written contract for deed. The written contract, which was only between Jody and Ed, memorialized the original verbal agreement between the parties and recognized that Jody had been making payments on the property since April 15, 1984. Jody agreed, pursuant to the contract, to purchase her half-interest in the property. The contract also provided that the parties would equally share costs for expenses, maintenance, taxes, and insurance. Additionally, the contract included the following default clause:

If Purchaser shall fail for a period of thirty (30) days to 1) pay Seller any of the sums herein agreed to be paid after such sums are due or 2) comply with any of the covenants on Purchaser's part to be kept and performed, then Seller shall be released from his obligation to convey the property and Purchaser shall forfeit all right thereto and all payments theretofore made by Purchaser under this contract shall be considered as compensation for the use and occupancy of the property and shall be retained by Seller.

---

4. The point relied on is deficient in that it presents six disparate claims of error. The point challenges six different trial court rulings, including the court's rulings on all four counts of the Hineses' petition, the Hineses' counterclaim against Old Kinderhook, and the Hineses' cross-claim against the Smiths. Although each of these claims has its basis in the same claim that Jody did not breach the contract, the point as written does not explain how the multiple allegations of error are related to a single legal issue. Each of the trial court rulings has its basis in separate legal principles. A point relied on that combines allegations of error not related to a single issue violates Rule 84.04. *Martin v. Reed,* 147 S.W.3d 860, 863 (Mo.App. S.D.2004). Improper points relied on, including multifarious points, preserve nothing for appellate review. *Id.* We address the merits of the point relied on because both the court and Respondents were able to discern the argument made by the Hineses.

The thirty (30) day period of Purchaser's failure to perform Purchaser's obligations hereunder shall be measured from the tenth (10th) day following receipt of notice of default by Purchaser from Seller.

. . . .

The extension of time of payment of any one or more installments as provided herein or the permitting of same to remain due for a longer period than herein provided or the waiver of any rights of the Seller under this Contract shall not preclude or prevent Seller from treating this Contract at an end for any subsequent breach.

In another clause, the contract prohibited Ed from conveying the property:

Seller, for so long as this contract is executory and Purchaser is not in default hereunder, shall not convey the property described herein or encumber it in any way or otherwise affect record title to the property as it now appears in the records of the Camdenton [sic] County Recorder's Office in the State of Missouri.

After Jody's mother passed away, Jody's relationship with Ed deteriorated. The Smiths married on February 14, 1996. The parties could not agree about how and when the lake property should be used and Jody authorized Ed to sell the property to the Skol de Terre company.[5] In 1996, Ed attempted to sell the property to Skol de Terre, but the sale did not materialize. Jody admitted that she had given Ed the authority to make the initial sale to Skol de Terre, but claimed she did not authorize a subsequent sale to Old Kinderhook. Additionally, she testified that although she never specifically revoked the authority she granted regarding the initial sale, she believed any authority she had given

had been revoked when the sale to Skol de Terre did not materialize. Ed admitted that he executed a deed in November 1996 conveying the property to Ed Smith and Jessie Smith, husband and wife.

In 1997, a dispute arose regarding the timeliness of Jody's payments. Ed claimed he sent the utility bills for December 1996 and January 1997 and the tax statement for 1996 to Jody via her attorney in March 1997. On May 5, 1997, Ed's attorney sent a letter to Jody's attorney requesting a payment for Jody's share of the December 1996 and January 1997 utility bills. Jody admitted that she did not timely pay the utility bills for December 1996 and January 1997, but she claimed that she never received the bills from Ed. When confronted with the May 5, 1997 letter stating that Ed had sent the utility bills to her attorney in March, Jody responded that Ed normally sent the bills to her, not her attorney, and that because the bills were sent to her attorney, she had not seen them. She further explained that she did not get the bills unless they were mailed to her. Similarly, she asserted that because the May 5 letter was never sent to her, she had not seen it.

Ed's attorney subsequently notified Jody that Ed had not received several payments from Jody as of May 14, 1997. Jody then wrote a letter to Ed's attorney on May 23, 1997, advising him that she would mail replacement checks for the missing payments. She mailed the checks, but Ed did not accept the payments and notified her that she was in default. On June 9, 1997, Ed's attorney notified Jody that she was in default, the contract was forfeited, and Ed was changing the locks on the property. After Ed changed the locks, the Hineses no longer had access to

---

**5.** Skol de Terre is the predecessor in interest     to Old Kinderhook.

the property and could not use the property as they had prior to the dispute.

The Smiths subsequently entered into an option to purchase real estate contract for the sale of the property to Old Kinderhook. The contract provided that Old Kinderhook had the exclusive right and option to purchase the property until May 31, 2000, and that Old Kinderhook would lease the property for a period of at least 30 months. Old Kinderhook began leasing the property from the Smiths and eventually exercised its option to purchase the property. Jody was not present at the closing and never executed a quit claim deed to Old Kinderhook.

■ As noted, the trial court found Jody to be in breach of the contract triggering a default of the contract. Since the Hineses have not appealed the judgment against Jody on the Smiths' counterclaim, the finding that she breached the contract for deed cannot be attacked here and the unappealed judgment against Jody must be recognized as an adjudication, adverse to her, of the issues raised in the counterclaim. *See Hardin v. Ray*, 404 S.W.2d 764, 769 (Mo.App.S.D.1966) (holding that findings that are unassailed on appeal cannot be attacked); *see also McDown v. Wilson*, 426 S.W.2d 112, 118 (Mo.App.S.D. 1968) (holding that an unappealed judgment must be recognized as an adverse adjudication of issues raised in that count).

Each of the Hineses' claims on appeal stems from a right to possession or damages under the contract. As to Count I for specific performance, the court found that Jody failed to pay her one-half of the utilities incurred on the lake property in a timely manner and Ed, therefore, properly forfeited the contract. The court specifically found that Jody had been informed of the amount of the utility expenses. Additionally, due to the proper forfeiture of the contract, Ed had the right to sell and convey the property to any third party.

Likewise, the court found that the Hineses were not deprived of the use, enjoyment, and possession of the premises claimed in Count II because the locks on the lake property were not changed until after Ed forfeited the Contract for Deed.

As for Count III, the action for conversion of a boat lift, the trial court found that the lift was attached to the dock, which was attached to the real estate governed by the Contract for Deed. When Ed forfeited the Contract for Deed, the dock became a fixture and became the sole property of Ed.

The court also denied the Count IV partition and accounting claim. The court found that the Smiths made an accounting when they conveyed the real estate to Old Kinderhook on February 23, 2002. The court further found that the Smiths took the amount of rent collected into consideration when they calculated the total figure for the Hineses to receive from the closing of that transaction. The court also found that the real estate could not be partitioned because neither party had an interest in the land because forfeiture extinguished the Hineses' interest in the land and made the Smiths the sole owners. When the Smiths subsequently conveyed their entire interest to a third party, neither the Smiths nor the Hineses owned anything for the court to partition.

Likewise, on the cross-claim filed by Jody against Ed, if the Contract for Deed was properly forfeited for non-payment of utilities expenses, Jody could not be deprived of the use and enjoyment of the subject real estate. Because all of the Hineses' claims against Old Kinderhook derived from a claim of a valid contract being in existence between Jody and Ed at the time Old Kinderhook entered into the option contract with the Smiths, the Hines-

es cannot assert any claim for possession of the property or for damages for the loss of use and possession of the property.

■ Therefore, although the Hineses' point relied on claims six trial court errors because it incorrectly determined that Jody breached the contract by failing to make timely utility payments as required by the Contract for Deed, the failure to claim trial court error in the grant of the Smiths' breach of contract claim disposes of the case. Because the Hineses do not challenge the trial court's ruling that Jody breached the contract in their point relied on, that ruling stands. Thus, the Hineses' point suggests a resolution in which our potential ruling would conflict with the un-challenged and final judgment finding Jody in breach of the contract.[6] We, therefore, affirm the judgment of the trial court.

GARRISON, P.J., and PREWITT, J., concur.

---

**6.** We do not address the Hineses' second point as it challenges the denial of punitive damages. If actual damages are not warrant-ed, punitive damages cannot be awarded. *Williams Carver Co. v. Poos Bros., Inc.,* 778 S.W.2d 684, 686 (Mo.App. W.D.1989).